Our final case for argument is 22-2020, One-E-Way v. Apple. Please proceed. May it please the Court, my name is Doug Muehlhauser, representing the appellant One-E-Way. And One-E-Way is here to address reversible error committed by the District Court in interpreting the stipulated construction between the parties. In claim construction proceedings below, One-E-Way and Apple stipulated that the construction of the term unique user code means a fixed code bit sequence specifically associated with one user of the devices, where the S is in parentheses. On motion for summary judgment, the District Court interpreted the stipulated construction by adding additional narrowing requirements, namely that the unique user code must be tied to the identity of the user, and that the unique user code must be created based on identity information, such as a username or password. Wasn't that decided by the ALJ and then agreed to, that it means user and not device? The ALJ's understanding throughout the claim construction process before the ITC was that the devices always had the code. He understood that from the very beginning all the way through the second day and up to the time that he released his order on claim construction, and he explained that the unique user code is associated with the user, not merely the devices. That was his understanding. The narrowing limitations were never added to the construction by the ALJ, never added before the ITC. This was only done before the District Court on summary judgment. The patent emphasizes user all over. That's right, but the patent more importantly emphasizes that it's the devices, the transmitter and the receiver of the audio system, that are required to use the unique user code to distinguish transmissions of other devices nearby, operating nearby, so that the devices using the unique user code can provide private listening and address the needs of the individual user, which is to enjoy a private channel. Wouldn't it have been easy for the patent owner to draft claims that said a unique device code, but instead they drafted different claims that say unique user code? It seems to me in thinking about this issue, even if it were close, the plain language is a user code, not a device code. In the specification we find that the inventor was focusing on the needs of an individual user. An individual user that was using a portable audio source and needed to have private listening because there would be other devices operating nearby. The devices were for an individual user. We can see that from the background of the patent where it's talking about portable audio devices that were already in the art, like portable cassette tape players, for example, where at that point they used conventional cables attached to a headphone so that the user would have a private listening experience, hear his or her own music free from interference because of the cable. It was allowing only the user's channel to come through, but it was for the user. I hear what you're saying, but that doesn't change my view, to be honest with you, because the thing is that even if in hindsight there was a wish to use device instead of user, the claim refers to a user, unique user code, not a unique device code. And I can understand that there could be some hindsight wish that I wish I would have used something different, but with public notice behind claims, you want to make sure that the public sees the claim terms and understands what they mean and that the specification distinguishes between a device and a user, why shouldn't we affirm the interpretation and say that when we're talking about unique user code, it's for the user, not a device? Well, I guess first off I would say the narrowing limitations added by the district court go far beyond that. They try to tie the unique user code to the identity of the user when that never comes up anywhere in the intrinsic record. No discussions about identity. I guess I would also add that it's- How is that different? Let's say I have a user code that's for me. I'm assigned number adding identity to that. That way you know my identity is carousel and it's number 10. That's my user code. I would say a proper interpretation must find support in the intrinsic record. That would not. You have to use a username and a password. That certainly is identity. But that never comes up in the patent specification. It never comes up anywhere in the intrinsic record. But how about the prosecution? You, generically, your client conceded the point to avoid the shots reference by saying that that is the device code and hence what you were claiming was the user code. Well, I think to be clear, looking at that prosecution history where the statement about the shots codes was made by the applicant, before that statement was made, in a paragraph before that statement was made, the applicant made abundantly clear that the unique user code is used in the devices. Number one, the transmitter has a code generator that creates the unique user code. That's in the device. Okay, so this statement is made on 942 of the appendix. That's where the prosecution history is. So why don't you turn to page 942, which is, I think, what Judge Lurie is referring to, and tell us why he isn't correct because, I'll quote from page 942, as such, the shots code may be properly deemed a device code as opposed to a user code as in the present invention. That's a pretty strong piece of intrinsic evidence. Well, what you need to understand, and I think it's clear from the prosecution history in the applicant's statement, is in the paragraph before that, the applicant has already made clear that the unique codes of the invention are assigned to the devices. Made that abundantly clear in that paragraph. Well, what is this claim? Claims 1, 4, and 6 require a code generator that generates and modulates a user code that creates a unique hot pattern for each individual user. It doesn't say for each device. It says for each user. That's right. But it's the code generator in the transmitter that's creating the unique user code. It's for the individual user, absolutely. It's for the needs of the individual user to distinguish his or her transmissions from other devices operating nearby. But the devices have the codes. The codes are assigned to the devices. It goes on to say in the paragraph on 941 in the appendix, the unique pseudo noise PN code that is long enough and has low cross-correlation properties so that the hot pattern is unique for each individual user. The importance of the hot pattern is so that the transmitter and the receiver can agree when to listen to the right frequency to find the transmissions and piece them together to put together the audio representation for the user. But the devices have the code. Yes, the code is assigned to the devices. That's already established before you ever get to the statement about shots. So that's why when you really are looking at what was the distinction over the shots prior art, it was based on usage scenarios. Looking at that, at the sentence, the codes are assigned. I'm looking on appendix 942, by the way, the first full paragraph. These codes are assigned to specific devices for a single household, not individual users. And I can point out that at least five times in Apple's opposition brief, they used an omit the usage scenario. Assigned to specific devices for a single household, not individual users. But what Applicant has already established in the prior paragraph and the paragraph that follows the statement about the shots codes is that the devices have already been assigned the codes. And so by the time you're looking at the statement here, the codes are assigned to specific devices for a single household, not individual users. It's that specific usage scenario that matters. It's the codes are assigned in the shots context to specific devices for a single household. In the invention context, the codes are assigned to devices for an individual user. Counsel, these are expired patents. I'm sorry, Your Honor, I didn't... These are expired patents, correct? The patent, at the time that the lawsuit was brought, the patents had another... But they're expired now. They're expired today, yes. Is there other litigation going on other than against Apple? No, there's not. This is the only case that's going on under the guidance. So just to wrap up this point, I'd like to follow on in the same paragraph where the statement about the shots codes is made. Immediately after, the Applicant says, there's no mention in shots that the PN code must support individual users operating within the same space. That's a clear indication that the code must support individual users, but the code is assigned to the devices to do that. In the very next sentence, by contrast, the present invention addresses the interference between individual users, and each PN code and its hopping sequence is generated to address the needs of individuals. So there's no disclaimer of all device codes. It's made clear that the devices of the invention are assigned to the codes, and it's the purpose, it's the usage scenario that matters in the distinction over shots. Applicant goes on in the same prosecution history action to indicate that later, and I'm on Appendix 946 now, shots does not design his system to function with multiple users in the same space. In fact, he teaches away from the use of independent stereos. And so again, to function with multiple users means you need to have this code that can suppress the interference from other devices that are operating nearby. And then finally, I'll just point to the interview summary where the Applicant continues the same line of distinction over shots. This is Appendix 988. I'm looking at the very bottom of the page where the Applicant says, during the interview on June 13, 2006, among other things, Applicant also explained to the examiners that unlike shots' invention, the Applicant's invention is designed to suppress self-interference. So it's the usage scenario. In shots, the codes were assigned to devices. In the invention, codes are assigned to the devices. What matters for distinction purposes is what was the scenario? Why were the codes assigned? In shots, it's for a single household. With the invention, they're assigned to provide private listening to the user, to support the user in an environment where multiple devices are operating and transmitting, and those signals need to be suppressed in order for the user to enjoy private listening. So, we feel like, very strongly, the District Court erred in finding a disclaimer here. Certainly there were no statements made during prosecution to the effect of... Can I answer? I don't think disclaimers are required, right? I mean, in other words, for claim interpretation under Phillips' standard, which applies here, it's not required that the prosecution history provide disclaimer or lexicography of a particular term in order for it to be relevant to claim construction, right? So even if the District Court's use of the word disclaimer was wrong, if we still thought the prosecution history supported the District Court's construction, that would be sufficient, right? I would agree with you. But again, there are no statements made during that prosecution history anywhere in connection with shots where the applicant made a statement that its invention is somehow... Whereas invention... There was no discussion in the prosecution history about tying identity to a user code, that a user code must be tied to the identity of the user. It never came up one way or the other. It was just silent about that. So I don't think that there's anything in that prosecution history that should affect the Court's decision here about whether the District Court's adding of these narrowing limitations was error. It just never came up. It's not in the specification. It's nowhere in the intrinsic record. Okay. Counsel, would you like to save the remaining time for rebuttal? Yes, I'll save the remaining time for rebuttal. Ms. Keefe? Good morning, Your Honors. If it pleases the Court, Heidi Keefe for Apple and with me is I think you asked exactly the right question. The fact is that the claims themselves use the word user, not device. The stipulated construction, the plain language of that construction is fixed code, bit sequence, specifically associated with one user of a device. That was repeated. That was found by the ALJ and the ALJ down below found it based on the fact that the file history confirmed, as we've been discussing, that in fact device codes were disclaimed. And even to Your Honor's point, Judge Stoll, whether or not there's a full disclaimer, absolutely it's informative that the invention must be about a user code, not a device code. That is then confirmed in the IPR file history in which the PTAB said, I see that the plain meaning here requires a user code, not a device code. I think the only question I heard was that... Can I ask another question? Please. We're talking about a stipulation here, specifically a claim construction. So the claim construction itself can't be challenged. We're looking at an interpretation of an interpretation, right? Isn't that what the... I think one of the ways challenges to an interpretation of an interpretation. I do think that they are challenging an interpretation of an... Sorry, an interpretation of a stipulation. And I think that is what they are challenging, yes. However, we know from cases like MyMail and UnwiredPlanet that you look to the plain meaning first of the stipulation. And the plain meaning of the stipulation here is it is fixed code specifically associated with one user of a device, not with one device. If the interpretation read out the word user so that now it was fixed code specifically associated with a device, first that would be rewriting the stipulation completely. And that's certainly not... But the point... I think my point helps your argument in that once there's a stipulation and parties can't challenge that stipulation on appeal, that makes it even more difficult to show that the claim shouldn't be interpreted as it was interpreted here. That's exactly right, Your Honor. And if I understand your question, that does help our argument, absolutely. And that's exactly like what happened in the UnwiredPlanet case. In between broadband and narrow band. And the argument on appeal was, well, I understand that the thing that we challenged for summary judgment may be agreed to be broadband, but now I'm going to interpret that to be narrow because it's only a part of the broadband. And the Federal Circuit here said, yes, but you can't change what the word broadband is that's in the plain meaning of the stipulated construction. And I think that applies directly here as well. Counsel, what about the sentence in 942 that says, these codes are assigned to specific devices for a single household, not individual users? Well, again, Your Honor, that's distinguishing the Schatz reference. That's exactly what he's saying the invention is not. He goes on right after that to say what the invention is, is assigning it to individual users, not to devices. And so what Schatz was saying, hey, these are device codes, not individual users, as opposed to the invention here, which is the exact phrasing, as opposed to a user code in the present invention. So that language directly supports the construction that we've always understood, that the ALJ understood, that the District Court understood, and that the Patent Office understood. And how much does the specification help you? I think the specification helps us greatly, Your Honor. In fact, one of the parts of the specification that I think is the most helpful is at column 2 of the 047 patent, lines 5 through 9, the wireless digital audio music system provides private listening without interference from other users or wireless devices and without the use of conventional cables. So the specification tells us that the patent owner at the time knew the difference between users and devices, and in fact, those are completely two separate terms, and they chose to have their codes associated with users, not devices. And it makes sense, because prior art at the time was device-specific, not user-specific. How about line 66, column 2? I believe that also assists us. So there what we have is the unique user code generated is specifically associated with one wireless digital audio system user. And it is the only code recognized by the battery-powered headphone receiver operated by a particular user. So the specification is telling us that the code has to be associated with a user, not a device. The reason the device comes up, it says that that's the only code the device recognizes is that user-specific code. And so it absolutely helps and supports everything, absolutely. Unless Your Honor's had any other questions, I believe I've addressed everything that was raised by my learned colleague. Does this patent explain how that user code is generated or created so that it will be communicated? No, Your Honor. In fact, the specification, well, the whole specification is silent as to how that code is generated, simply that the code is generated and then sent. And that was specifically also found by the district court down below. So what we don't have is sort of, what would be helpful is if we had examples in the spec, for example, like a user generating their own code or a user coming up with a specific sequence that would represent them and be inserted. We don't have something like that. We don't have anything like that, Your Honor. But nor do we have anything to the contrary. Nor do we have anything that says specifically that it's limited to or linked to anything else. Instead, it just says that the unique user code is generated. And so we don't know one way or the other how that can be, so it is not so limited. But what about what you read to me from column two, line 64, that said the Fraternity Powered Transmitter may contain a code generator that may be used to create a unique user code? And that's all we know. There is a code generator within the system. That code generator is not going to tell you how that code is generated. It doesn't limit it in any way. But we know that the code that is generated has to be unique to a user from the plain language of the claim, the plain language of the specification, and the plain language of the file history. Does that mean that theoretically, I'm a unique user, I could have multiple devices that would have access to this listening content because they all share my user code? So, that hypothetical is not addressed in the specification, Your Honor, but I don't believe so. And the reason I don't believe so is because in the specification, you have the code generator of the device generating the unique user code. But what matters here though is not whether or not it can also be associated with an individual device, but the code must be associated with an individual user. That's what the claim requires. That's what the instruction requires. But then, the suggestion there is even though I'm a unique user, I couldn't replicate and have that code be the code that's used on multiple devices? I'm trying to follow, Your Honor. I'm sorry. So, you're saying... So, a unique user code would imply that I have a code, like a password, that I could use on multiple devices to gain access. Potentially. A unique device code would be I have a device and it has a code and only that device of mine can gain access, but not my other devices. That's potentially true, Your Honor. However, the way that the specification describes it, it says that the code generator generates the unique user code. So, it's not necessarily just something like your password. It could be something, hypothetically, it could generate the numbers 4, 5, 6, 7 and associate it with you. From that language, if there's a code generator generating it, then it isn't specific to me or my characteristics so much as it is specific to the particular device. That's my concern. But that concern, Your Honor, is dealt with specifically in the file history where they say that's not who we are. We are not something that is limited solely to the device or that is linked to the device. We are different from that because that's what SHOTS had. SHOTS was a system that specifically generated its codes based on the device that it was talking to. So, I'll speak with Speaker 1 on one code, Speaker 2 on another code. What does this household versus individual users line even mean? I don't understand that sentence. So, I think all that they're meaning there is what SHOTS was contemplating was that you would have within a household, for example, a stereo that had multiple speakers. And so, within that household, the stereo had multiple speakers. And what they're distinguishing around, that stereo, by the way, then had individual device codes from the stereo to each speaker. And what the patent owner was saying here is that's one-to-many. Those are device codes because they're specific to the device. That's different from us because there may be one-to-many or one-to-one here, but they are user-specific, not device-specific. And that's why we have the very clear sentence. As such, the SHOTS code may be properly deemed a device code as opposed to a user code as in the present initiative. I understand. And I mean, this language strongly supports you on its face. But the only thing I'm struggling with is I don't understand how this patent generates a user code as I would think of a user code. I don't know what it means. Like, I don't understand this language about what is a device code versus a user code because, you know, what you read me from the code generator, within a device, it's going to generate a unique code. That code is going to be unique to that device. It actually doesn't have anything to do with an individual. Well, but they continue to say throughout the specification, they constantly distinguish the device from a user. We go back up. Yeah, in the specification, they distinguish the device from the user. For example. I found it as a prosecution history. For example, also, at column two, lines five through nine, we see the wireless digital audio music system provides private listening without interference from other users or devices. And so right there, the specification is saying a user is different. Where, column two, where? Column two, lines five. This is in the 047, if you want me to. Isn't it the same as the 627? They're off by about three lines, I think, Your Honor, because of some reference. I'll try and go up or down then. Go ahead. I have 627 in front of me. So 627, let me just get that for you, Your Honor. 627, the same quote starts at line 10, at the end of line 10. Okay. The wireless digital audio music system provides private listening without interference from other users and then the seminal or wireless devices and without the use of conventional cable connections. And so the patent owner in the specification is telling us that users are different from So we go on through the remainder of that column, concluding at the bottom of the column, telling us that the unique user code has to be generated and it is a user code and we hear that over and over. Is that the only place, I haven't done a word search, is that column two, about line 10-ish, the only place where they talk about devices as opposed to users? No, Your Honor. They talk about devices in column one, but it's not sort of contrasted with users or in a sentence. So column two, Your Honor, is the only place that I saw where there was an absolute distinction between user or device. But throughout the remainder of the specification, they talk about users as being humans and I don't think that's not disputed here. In fact, page eight of the blue brief says that a user is a human. They talk about humans wearing headphones, that's certainly what humans do. And they talk about the devices as being the device that holds the transmitter. So there's multiple discussions of devices and we see in column one, for example, audio players, this is at lines 57 through 58, music audio player devices, i.e., the previously mentioned music device, to allow encoded... Column three helps you too, doesn't it? Absolutely it does, Your Honor. At line 23, specific to a particular user? That's absolutely correct, Your Honor. And that's actually... Line 31? Correct, Your Honor. And the line, the one that's even more important about line 23 that Your Honor is pointing to is that's the specific portion of the specification cited by the applicant at the time that there was support for a specific user in the file history at that time. Okay, thank you, Ms. Keefe. I appreciate it, Your Honors. Thank you very much. Mr. Muehlhauser, you have some rebuttal time. Thank you, Your Honors. So I guess I'd like to just point out that we mentioned in our briefing that there are numerous instances where applicants use the term users but plainly refer to devices in that use. And I won't go into every single one of them, but I can point out that we've identified these in our reply brief at page 22 and also in our... How can we interpret patents or contracts when we say one word plainly means something different? Well, I think in the... When you understand the context of the invention where the devices use the unique user code without question to distinguish transmissions, to provide private listening for a user. That's why it's a user code, because the user is enjoying the benefit of that code. But when you understand that, it becomes a matter of convenience to just use less words when you're talking about interference from a source, interference from other users. Patents are written specifically, section 112 users particularly point out and claim. Patents are not vague documents. I understand. I will only add that when you talk about, for example, a statement that says interference from other users, we know that there's no dispute on this record that humans are incapable of generating transmissions in the high kilohertz range, the megahertz range, or the gigahertz range. And so it really isn't... It's not really... You wouldn't understand with common sense that interference is coming from a user. It really is the devices that you're talking about. We submit that that's clear when you read the uses, the many uses that applicant made of user in several instances. So that's one point. And then secondly, I'd like to point out that Apple's placing a lot of emphasis on the use of the word user, as if simply using the word user, you can import some meaning. Well, that must bring with it identity information that must be associated. We must account for that here. When we talk about a user, yes, we're assigning the code. We're assigning the code to an identity of a user. Or the code must follow a particular... One of the parties here is Apple. You're almost saying we have not apples, but oranges. Well, I think that's fair. When we think about user, it's simply not a gateway to import all of these narrowing limitations, just simply because you've used the term user. Apple has indicated in its brief, it's not really supporting the narrowing limitations that the district court added in its interpretation. But Apple is saying that it does think that the unique user code should contain or reflect  It should follow a user. The code should change in the device when it changes hands from one human to another. Or the code, somehow it can't be user agnostic, just because of the word user. It really doesn't follow. It's not in the intrinsic record anywhere. Well, counsel, we're well beyond our time, so I thank both counsel, who's taken under submission.